IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ANDREW ALAN WIEDERHORN, | ) | |
| | ) | |
| Petitioner, | ) | Civil No. 05-360-TC |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ALBERTO GONZALES, Attorney General, | ) | |
| United States Department of Justice; | ) | |
| CHARLES DANIELS, Superintendent, | ) | |
| FPC Sheridan; and the UNITED STATES | ) | |
| BUREAU OF PRISONS, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

COFFIN, Magistrate Judge.

Presently before the court is the petition for habeas corpus relief (#1).[1]

_____

[1]Petitioner has also filed a motion (#26) for a preliminary injunction. At the combined hearing on that motion and the merits of the petition, I ruled that respondents were ordered to provide petitioner with the requested medication (Lantus and Humalog) pending their compliance with the court's order disposing of the petition. Additionally, respondents filed a motion (#32) to strike a document based upon a clerical error made in the filing process. That motion is granted.

1 - ORDER

## BACKGROUND

Petitioner Alan Wiederhorn is currently serving an 18-month sentence at the Federal Prison

Camp at Sheridan, Oregon ("FPC Sheridan") following his conviction on charges of Payment of

Gratuities and Filing a False Tax Return. He self-surrendered to the custody of the Bureau of Prisons

("BOP") on August 2, 2004, and has served approximately eight months of his sentence. Petitioner

has now filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2241, seeking an order from

the court transferring him to home confinement or a community corrections center ("CCC") on the

grounds that he has been subjected to cruel and unusual punishment in violation of the Eighth

Amendment, because his medical condition has not been adequately treated, and that he has an

entitlement to immediate transfer under BOP regulations that provide for discretionary transfer to

the community for, inter alia, inmates with medical problems.[2]

## STANDARD OF REVIEW

To obtain relief under 28 U.S.C. § 2241, petitioner must demonstrate that "[h]e is in custody

in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(b)(3); see

also Benny v. U.S. Parole Comm'n, 295 F.3d 977, 988-89 (9th Cir. 2002).

## DISCUSSION

Petitioner is an insulin-dependent ("Type 1") diabetic. Prior to his incarceration, petitioner's

---

[2]In his petition, petitioner has named as respondents the Attorney General of the United States, the Superintendent of FPC Sheridan, and the Bureau of Prisons. However, pursuant to 28 U.S.C. § 2242, the only proper respondent is the person who has custody over petitioner, in this case Charles Daniels, the FPC Sheridan Superintendent. As such, respondents Gonzales and the Bureau of Prisons are dismissed from this action.

2 - ORDER

diabetes was treated with a regimen of two fairly new forms of insulin - Humalog and Lantus.[3]

Between the time he began using Humalog and Lantus in 2001 and the start of his incarceration at

FPC Sheridan, petitioner's A1c hemoglobin scores[4] ranged from a low of 6.2 to a high of 7.8,

averaging about 7.08. He has had three A1c tests done during his incarceration, with scores of 7.0,

7.4 and 7.1, which average out to about 7.16.[5] Thus, the scores do reflect a slight increase in his

long-term blood glucose levels since his incarceration and the resulting switch to "regular" insulin.

It is contested whether petitioner's scores of 7+ demonstrate per se a dangerous medical

condition requiring atypical (for FPC Sheridan) care, as is whether the increase in petitioner's A1c

scores since his incarceration similarly reflects a potentially serious medical situation requiring an

atypical regimen. It is, however, generally agreed by governmental health standards that changes to

a given course of treatment need not be considered unless a diabetic patient begins receiving scores

of 8+. See National Institutes of Health, Your Guide to Diabetes: Type 1 and Type 2 (visited May

7, 2005) <http://www.diabetes.niddk.nih.gov/dm/pubs/type1and2/daily.htm>; see also Federal

Bureau of Prisons Clinical Practice Guidelines for Diabetes (#15, Declaration of Dr. Muhammad

---

[3]These forms of insulin became available in 1996 (Humalog) and 2001 (Lantus). They are frequently used together to maintain optimal insulin/glucose levels throughout the day. See John Walsh, P.A. & Ruth Roberts, M.A., Humalog and Novalog Insulins (visited May 7, 2005) <http://www.diabetesnet.com/diabetes_treatments/insulin_humalog.php>. Petitioner started on this regimen sometime in 2001. Prior to that time, he had been treated with "regular" insulin, the form used to treat diabetics at FPC Sheridan.

[4]A person's A1c hemoglobin score measures that individuals average blood glucose levels over the preceding three months.

[5]There is some debate regarding the scale of the tests done by petitioner's physician prior to his incarceration and that employed by the labs used by FPC Sheridan, with petitioner contending that his FPC Sheridan scores actually would show higher results if they had been measured by his physician. However, for purposes of this petition, the court will credit the scores as reported.

3 - ORDER

Aslam, Attach. 1) at 20. Out of an abundance of caution, the court has ordered FPC Sheridan to supply petitioner with Humalog and Lantus while this decision was pending, and while it was implemented. Ultimately, though, whether petitioner's A1c scores reflect a dangerous condition is a question to be considered by the Bureau of Prisons in evaluating the most appropriate place for petitioner to be confined - an evaluation petitioner alleges the BOP has failed to provide him.

On that allegation I do find that the BOP has not yet fulfilled its obligation to petitioner. The BOP's response to petitioner's allegation is that, pursuant to newly-established BOP regulations, inmates are considered for transfer to community facilities for confinement only during the last ten percent of their sentence, and in no instance exceeding six months.[6] These regulations interpret the BOP's statutory mandates regarding determining the place of imprisonment for federal prisoners,[7] and reflect a change from a decades-long BOP policy that considered evaluating prisoners' suitability for community confinement to be appropriate at any point of a prisoner's incarceration, with the BOP typically considering CCC placement for the final six months of any period of imprisonment.

The validity of these new regulations is highly suspect. Although there is a split of authority among the district courts, see Pinto v. Menifee, 2004 WL 3019760 (S.D.N.Y. Dec. 29, 2004) (collecting cases), both circuit courts that have examined the question have found the regulations to be invalid. See Goldings v. Winn, 383 F.3d 17, 23-27 (1st Cir. 2004); Elwood v. Jeter, 386 F.3d 842, 846-47 (8th Cir. 2004). As held by both of these courts, 18 U.S.C. § 3624(c) only limits the affirmative obligation of BOP to assure that a prisoner spends the last part of his sentence under pre-release conditions but does not limit the agency's discretionary authority to place a prisoner in a CCC

---

[6]28 C.F.R. §§ 570.20; 570.21.

[7]18 U.S.C. §§ 3621(b) and 3624(c).

4 - ORDER

at any other time during the prisoner's sentence. Thus, "[s]ection 3624(c) places a six-month cap on the period of time for which BOP must designate an offender to a less restrictive facility, as opposed to limiting the period of time for which BOP may designate an offender to a CCC." Pimentel v. Gonzalez, ___ F.Supp 2d. ___, 2005 WL 1023479, *2 (E.D.N.Y. May 3, 2005) (emphasis in original).

I agree with the First and Eight Circuits that the new BOP regulations contradict, rather than interpret, Congress's intent in enacting 18 U.S.C. §§ 3621(b) and 3624(c). As noted by the First Circuit in Goldings, Section 3624(c)

> [R]eflects Congress's intent to impose upon the agency a duty to prepare prisoners for reentry into the community, without tying the hands of administrators in deciding where prisoners are to be placed. The BOP is not free to disregard that duty.

Goldings, 383 F.3d at 23. While § 3624(c) limits the BOP's discretion not to consider community confinement or other pre-release alternatives, it does not prohibit the BOP from doing so earlier pursuant to § 3621(b), which grants the BOP discretionary authority to choose an appropriate place of confinement from among "any available penal or correctional facility" (emphasis supplied). On its plain terms, such would include community correctional facilities.[8]

---

[8]The BOP itself, in Program Statement No. 7310.02 (1993), has stated that CCCs meet § 3621(b)'s definition of a penal or correctional facility. Indeed, the government's own Office of Legal Counsel has previously "declined to draw a distinction between residential community facilities and secure facilities," until this very issue - the BOP's discretion to place inmates in a CCC - arose. See December 13, 2002 Memorandum Opinion (directing, in part, that community confinement was no longer to be considered imprisonment for purposes of following a sentencing order, and causing the BOP to enact the new regulations on CCC confinement). Specifically, the OLC Opinion concluded that "[the] BOP lacks clear general statutory authority to place in community confinement an offender who has been sentenced to a term of imprisonment." As noted above, I disagree. Further, I am not at all convinced that the government's assertion that the Ninth Circuit has conclusively decided, under these circumstances, that a CCC is not a place of imprisonment is correct. The case cited by the government for this proposition, United States v. Bahe, 210 F.3d 1124 (9th Cir. 2000), dealt with a district court's discretion to place an inmate in a CCC for his period of post-prison

5 - ORDER

Because I agree with the First and Eighth Circuits and with Judge Ashmanskas of this court[9] that the new BOP regulations are invalid, respondent Daniels is ordered to consider the appropriateness of petitioner's place of imprisonment in light of his medical condition[10] and the other factors set forth in 18 U.S.C. § 3621(b), and without consideration of either the 2002 OLC Memorandum Opinion or 28 C.F.R. 570.21. Such consideration is to be made by May 20, 2005.[11] The preliminary injunction entered at oral argument, directing the BOP to provide petitioner with Humalog and Lantus as soon as is reasonably practicable, shall remain in effect until such time as respondent Daniels provides such consideration.

## CONCLUSION

Petitioner's motion (#26) for a preliminary injunction is granted to the extent that respondents are directed to make Humalog and Lantus available to petitioner as soon as is reasonably practicable, for the time between the entry of the order granting the injunction to the time respondent Daniels has complied with this order. Respondents' motion (#32) to strike and substitute is granted. Respondents Gonzales and Bureau of Prisons are dismissed from this action. Respondent Daniels

---

supervised release, so that his psychological condition could be treated under appropriate supervision. That the court, in that setting, distinguished community confinement from imprisonment does not compel the conclusion that a CCC cannot be a "penal or correctional facility" for purposes of fulfilling the BOP's 18 U.S.C. § 3621(b) obligation.

[9]Cook v. Gonzales, Civ. No. 05-09-AS, 2005 WL 773956 (D.Or. 2005).

[10]A medical condition constitutes a "characteristic[] of the prisoner" to be considered. 18 U.S.C. 3621(b)(3).

[11]The court is aware that petitioner is set to be transferred to the Federal Medical Center at Rochester, Minnesota, where Humalog and Lantus are available, on approximately May 19, 2005. In no way is this order to be construed as taking any position on the appropriateness of the BOP's exercise of its discretion to make such a transfer.

6 - ORDER

is directed to consider the appropriateness of petitioner's place of imprisonment in light of his medical condition and the other factors set forth in 18 U.S.C. § 3621(b), without consideration of either the 2002 OLC Memorandum Opinion or 28 C.F.R. 570.21. Such consideration is to be made by May 20, 2005.

DATED this _9th_ day of May, 2005.

Thomas M. Coffin
United States Magistrate Judge

7 - ORDER